Christopher M. Taylor
68340   ISCC / A 209 A
P.O. Box   70010
Boise, ID      83707

U.S. COURTS

MAR 3 0 2017

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER M. TAYLOR,<br><br>    Petitioner,<br><br>v.<br><br>RANDY E. BLADES,<br><br>    Respondent. | Case No. 1:15-cv-00552EJL<br><br>AMENDED PETITION FOR WRIT<br>OF HABEAS CORPUS<br>28 U.S.C. § 2254 |

COMES NOW, Christopher M. Taylor, petitioner pro se, and hereby presents the Court this amended petiton for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, and local Rule 15.1, specifically moves the Court to issue an Order for the Respondent to show cause why the petitioner should not be released from incarceration for those reasons set forth herein and after:

I.  PRELIMINARY STATEMENT

This matter brings before the Court Mr. Taylor's claims that his state court convictions for aggravated battery upon a police officer, I.C. §§ 18-903, 18-907, and 18-915, enhanced for being a persistent violator, I.C. § 19-2514, and further enhanced for use of a deadly weapon, I.C. § 19-2520;

were obtained in violation of guarantees provided under the United States Constitution, contrary to holdings in numerous United States Supreme Court cases, federal law, and the precepts of 28 U.S.C. §§ 2241-2254. An evidentiary hearing is requested.

## II. JURISDICTION AND VENUE

Jurisdiction is proper under Article I Section 9, and Article III Section 2, of the constitution of these United States; as well as Title 28 §§ 2241 - 2254, United States Code.

Venue is properly before this Court because the events and circumstances that are the cause of this proceeding occurred within the County of Jerome, State of Idaho.[1]

## III. STATEMENT OF THE CASE

At approximately 5:00 pm on February 7, 2011, Mr. Taylor was observed driving by Jerome City Police Officer Dennis Clark at a speed over the posted speed limit. Officer Clark recognized Mr. Taylor and was apparently aware that his driving privileges were suspended at the time. Clark attempted to make a traffic stop. Mr. Taylor did not stop his vehicle. Instead, his speed gradually increased. Mr. Taylor reached a residence at 300 South and 51 East in Jerome, Idaho, where the vehicle's driver side door opened breifly. Clark pulled his patrol car in about two car lengths behind Mr. Taylor's vehicle with his gun drawn and pointed at Mr. Taylor. At that point, the driver's side door closed again, and the vehicle turned around and began driving to the east on 300 South.

---

[1] State v. Taylor, Jerome County Case No. CR-2011-0697.

During the pursuit, Officer Clark momentarily lost sight of the vehicle as it came over a small hill. When he regained sight of the vehicle, it was stopped in the roadway and Mr. Taylor was standing outside of the vehicle with a shotgun. Clark stopped his vehicle approximately 50 feet from Mr. Taylor and observedd him point the shotgun at his patrol car. Officer Clark ducked to his right and Mr. Taylor fired one shot at the patrol car. The officer was struck above the left eye with either a single pellet from the shotgun, or perhaps a glass fragment from the patrol car's windshield.

Next, Officer Clark rammed Mr. Taylor's vehicle with his patrol car, but Mr. Taylor returned to his car and began driving back the other direction. At that point, Officer Clark exited his patrol car and fired several more shots at Mr. Taylor. By this time, several other members of various law enforcement agencies had joined the pursuit. Jerome City Police Officer Scott Novak had positioned his patrol vehicle so that Mr. Taylor was driving towards it. The vehicle was located halfway in the road, and halfway off the road. Officer Novak had exited his vehicle and positioned himself at the passenger side rear quarter panel, with his gun drawn in the "ready" position. Officer Novak would testify that as Mr. Taylor's vehicle was approaching his position; it drifted from the right lane, towards his vehicle, which was parked on the opposite side of the road. Officer Novak moved away from his vehicle, to avoid being struck in the event Mr. Taylor's vehicle struck his patrol car. Novak fired two shots at Mr. Taylor.

Later, Mr. Taylor would testify that he saw Officer Novak with his firearm pointed at him, and that he ducked while driving by that position to avoid being shot in the face or head. Mr. Taylor never intended to swerve towards Officer Novak.

Meanwhile, Officer Clark was still in pursuit, and shortly after made the decision to ram Mr. Taylor's vehicle off the roadway. The vehicle crashed, and Mr. Taylor was arrested without further incident. Mr. Taylor had been shot in the hand and had serious lacerations on his head. He was transported to a local hospital.

Officer Clark was taken to the hospital, and ultimately underwent multiple surgeries to remove material from above his eye.

The district court imposed concurrent fixed life sentences.

## IV. COURSE OF PRIOR PROCEEDINGS

Mr. Taylor is a state prisoner currently serving two (2) concurrent fixed life sentences without possibility for parole. The Hon. John K. Butler, District Judge, presiding, denied Mr. Taylor's rule 35 Motion for reduction of sentence.

Thereafter, a timely notice of appeal was filed.[2] On direct appeal, Mr. Taylor raised the following two (2) claims:

1. Did the district court abuse its discretion when it imposed unified sentences of fixed life in prison, no indeterminate, upon Mr. Taylor following his plea of guilty?

2. Did the district court abuse its discretion when it denied Mr. Taylor's Idaho Criminal Rule 35 Motion For A Reduction Of Sentence?

The Idaho Court of Appeals affirmed Mr. Taylor's conviction and sentences; and affirmed the district court's order denying his I.C.R. 35 motion for reduction of sentences. A petition for review was filed in the

---

[2] State v. Taylor, Docket No. 39844-2012, Idaho Court of Appeals, Unpublished Opinion No. 610, August 1, 2013.

Idaho Supreme Court and subsequently denied September 19, 2013, with the final remittitur issuing September 19, 2013.[3]

Mr. Taylor filed a collateral challenge to the conviction(s) by submitting a petition for post-conviction relief (PCR) in state district court. Pursuant to the prison mailbox rule, Mr. Taylor filed his PCR application when he surrendered his pleading to prison official's for placement in the prison Resource Center outgoing privileged legal mail.[4] The district court ultimately file stamped Mr. Taylor's petition September 23, 2014. On January 16, 2015, the district court entered an order summarily dismissing Mr. Taylor's PCR petition (with prejudice).

Thereafter, the Idaho Court of Appeals affirmed the district court's holdings and denial of relief.[5] The Idaho Supreme Court declined review and a final remittitur issued June14, 2016. However, Mr. Taylor had not yet received the Opinion from the Court of Appeals, and subsequently filed a motion to file a late petition for review on June 27, 2016. The Idaho Supreme Court granted the motion; accepted Mr. Taylor's petition for review, which was subsequently declined and the Second Remittitur issued August 17, 2016.[6]

Mr. Taylor hereby incorporates by this reference all arguments and affidavits previously, contemporaneously, and subsequently made in support of the initial Petition for Writ of Habeas Corpus, together with the claims and

---

[3] Exhibit 1 - Certificate of Remittitur, State v. Taylor, Docket No. 39844-2012, lodged September 19, 2013.

[4] Taylor v. State, (PCR) Jerome County No. CV-2014-857, filed September 19, 2014, pursuant to the prison mailbox rule, cf Houston v. Lack, 487 U.S. 266.

[5] Taylor v. State, docket No. 43000-2015, Idaho Court of Appeals, Unpublished Opinion No. 532, May 17, 2016.

[6] Exhibit's 2, 3 - Certificate(s) of Remittitur, Taylor v. State, Docket No. 43000-2015, [first] issued June 14, 2016; Second issued August 16, 2016.

AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 5

together with the claims and assertions raised in the aforementioned course of prior proceedings. To the extent any of this information or analysis is inconsistent herewith, the instant Amended Petition controls.

## V. GROUNDS FOR RELIEF

A. CRUEL AND UNUSUAL PUNISHMENT - ABUSE OF DISCRETION

> DEFENDANT'S SENTENCE CONSTITUTE'S CRUEL AND UNUSUAL PUNISHMENT BECAUSE IT IS DISPROPORTIONATE TO THE CRIME WHICH ABROGATES THE PETITIONER'S RIGHTS UNDER THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION; AS WELL AS UNITED STATES SUPREME COURT HOLDINGS IN WEEMS v. UNITED STATES, 217 U.S. 349, 367 (1910); KENNEDY v. LOUISIANA, 554 U.S. 407 (2008) and their progeny.

This issue was raised for the first time during Mr. Taylor's motion for reduction of sentence pursuant to Idaho Criminal Rule 35. The claimant relies upon a wide range of issues involving defense counsel's deficient performance; ineffective assistance of appellate counsel; coupled with judicial bias and reversible error on the part of the sentencing court. Absent Mr. Taylor's authorization, the state appellate public defender characterized the issue as an abuse of discretion by the sentencing court when it imposed unified sentences of fixed life in prison, no indeterminate, upon Mr. Taylor following his plea of guilty.

Embodied in the cruel and unusual punishments ban is the "precept ... that punishment for crime should be graduated and proportioned to [the] offense." Weems v. United States, 217 U.S. 349, 367, (1910). The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, (1976) (quoting Trop

v. Dulles, 356 U.S. 86, 101, (1958) (plurality opinion)). "This is because '[t]he standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same, but its applicability must change as the basic mores of society change.'" Kennedy v. Louisiana, 554 U.S. 407, (2008) (quoting Furman v. Georgia, 408 U.S. 238, 382, (1972) (Burger, C.J., dissenting)).

The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances. See e.g. Hope v. Pelzer, 536 U.S. 730, (2002). "Punishments of torture," for example, "are forbidden." Wilkerson v. Utah, 99 U.S. 130, 136 (1879). These cases underscore the bedrock principle involving 240 years of American jurisprudence that, under the Eighth Amendment, the State must respect the human attributes even of those who have committed serious crimes.

For the most part, however, the high Court's precedents consider punishments challenged not as inherently barbaric but as disproportionate to the crime. The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense. Weems, supra at 367.

Proportionality of sentences fall within two general classifications. The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty.

The controlling opinion in Harmelin explained its approach for determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime. A court must begin by comparing the

AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 7

gravity of the offense and the severity of the sentence. 501 U.S., at 1005. (Opinion of KENNEDY, J.). "[I]n the rare case in which [this] threshold comparison ... leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. Id. If this comparative analysis "validate[s] an initial judgment the [the] sentence is grossly disproportionate," the sentence is cruel and unusual. Id.

As for the punishment, life without parole is "the second most severe penalty permitted by law." Harmelin, 501 U.S., at 1001. It is true that a death sentence is "unique in its severity and irrevocability," Gregg v. Georgia, 428 U.S. 153, 187, (1976) (joint opinion of STEWART, POWELL, and STEVENS, JJ.); yet life without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency---the remote possibility of which does not mitigate the harshness of the sentence. Solem v. Helm, 436 U.S. 277, 300-301, (1983).

A sentence of life imprisonment without parole, however, cannot be justified by the goal of rehabilitation. Graham v. Florida, 130 S.Ct. 2011, 2030 (2010). The penalty forswears altogether the rehabilitative ideal. Id. By denying the defendant an opportunity to reenter the community, the State makes an irrevocable judgment about that person's value and place in society. A State's rejection of rehabilitation, moreover, goes beyond a mere expressive judgment. Id. Defendants' serving life without parole sentences are often

denied access to vocational training and other rehabilitative services that are available to other inmates. Id.

An analysis of similar and more egregious cases should have demonstrated the boundaries of discretion for this sentence. Unfortunately, the sentencing court ascertained a desireability to impose a disproportionate fixed life term; in large part due to the sentencing court's utter disdain for Mr. Taylor's many tattoos.

Recognizing that no two cases have identical facts and circumstances, an analysis of cases where the defendants have similar criminal history and committed either similar or more serious crimes makes it fairly clear that the sentencing court disregarded an appropriate sentencing range for this case. See Petitioner's Memorandum in Support of Motion for Reduction of Sentence, State v. Taylor, Twin Falls County No. CR-2011-0697, ¶¶ III, IV respectively, pp. 5-9, filed March 23, 2012.

B.  INEFFECTIVE ASSISTANCE OF COUNSEL

>   INEFFECTIVE ASSISTANCE OF COUNSEL AT THE PRETRIAL, ENTRY OF PLEA, SENTENCING, AND DIRECT APPEAL STAGES WHICH VIOLATED THE PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AS WELL AS U.S. SUPREME COURT HOLDINGS IN McMANN v. RICHARDSON, 397 U.S. 759 (1970); STRICKLAND v. WASHINGTON, 466 U.S. 668 (1984); NORTH CAROLINA v. ALFORD, 400 U.S. 25 (1970); APPRENDI v. NEW JERSEY, 530 U.S. 466 (2000), among others.

   1.  First Claim of Ineffective Assistance of Trial Counsel (IATC)

Mr. Taylor's trial defense attorney encouraged him to plead guilty pursuant to a plea bargain that offered no advantage whatsoever over proceeding to trial. thereafter, at sentencing, counsel failed to object to the State's request for, and the judge's agreement to, what constitutes an illegal sentence under state and federal law. Counsel's failure to object to

these points and to preserve them for appeal, coupled with counsel's inept advice to accept a plea bargain which presented Mr. Taylor no incentive whatsoever. Such failures cannot be excused nor attributed to strategic or tactical considerations. These omissions are textbook examples of attorney ineffectiveness---resulting in prejudice because Mr. Taylor was denied his state and federal constitutional rights to effective assistance of counsel. Idaho State Constitution, Article 1, § 13; United States Constitution, Amendments 6 and 14 respectively.

2. Second Claim IATC

Defense counsel encouraged Mr. Taylor to plead guilty pursuant to North Carolina v. Alford, 400 U.S. 25 (1970) "... to avoid spending the remainder of your life in prison." Despite the incorrect representations of counsel, Mr. Taylor was sentenced to two (2) concurrent fixed life sentences without possibility of parole. Mr. Taylor only agreed to plead guilty based entirely on defense counsel's advice and assurance that the worst he faced was an indeterminate life term.

The Idaho Court of Appeals determination that "Taylor's assertions directly contradict the record" (Docket No. 43000-2015, Opinion No. 532, p. 9, ¶ 2.) is incorrect. Merely because the plea colloquy documents mention of a "life sentence", that alone does not support a conclusion that Mr. Taylor actually understood the full consequence of pleading guilty, e.g. to a potential fixed life sentence without ever being afforded a possibility for parole. Thus, Mr. Taylor's guilty plea was unknowing, involuntary, and un-intelligently entered without adequate explanations from his attorney as to the ramifications of the guilty plea.

//

3. <u>Third Claim, Appellate Counsel Ineffectiveness (IAAC)</u>

Mr. Taylor's court appointed appellate counsel neglected to present on appeal an issue involving the violation of Mr. Taylor's right to due process where the sentencing court fixed the enhanced portion of an already enhanced punishment.

Enhanced punishments are not a separate sentence, rather they allow for additional sanctions of the underlying offense. The maximum sentence prescribed by law for aggravated assault on a peace officer is double that for an assault on an ordinary citizen. i.e. ten (10) years. See Idaho Code §§ 18-901, 19-905, and 18-915(1)(b). Accordingly, while the district court was within its legal authority to fix that portion of the underlying sentence, up to the maximum period of ten (10) years, and could extend that term up to life via the persistent violator / use of a deadly weapon enhancements. Notwithstanding the statutory construction, appellate counsel failed to challenge that the district court was without legal authority to fix the enhanced portion of that same sentence.

In a landmark decision addressing enhanced sentences, our United States Supreme Court held that the maximum penalty that can be imposed, despite the statutory maximum, can never exceed the maximum sentence that could be "impose[d] solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." <u>Blakely v. Washington</u>, 542 U.S. 296, 303-04 (2004). If a state (such as Idaho) accords a statutory maximum sentence broadly to a class of crimes, and narrowly to a specific crime in that class, the relevant statutory maximum is the crime specific one. Id. at 303. See also <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000).

Oversight of this kind cannot be attributed to sound appellate

advocacy. Rather, it is indicative of ineffective counsel. Where the claims omitted from appellate presentation were stronger than the issues raised, presents a rime facie showing of IAAC.

* * * *

An accused criminal possesses a right to assistance of counsel. <u>Gideon v. Wainright</u>, 372 U.S. 335 (1963). That right includes the right to effective assistance. <u>McMann v. Richardson</u>, 397 U.S. 759 (1970).

A defendant who received ineffective assistance of counsel, therefore, has suffered a constitutional violation that is cognizable under 28 U.S.C. § 2254 - State custody; remedies in Federal courts.

Mr. Taylor received ineffective assistance of counsel from his trial attorney at the district court, and from his attorney on direct appeal before the Idaho Supreme Court. Mr. Taylor is entitled to relief as a matter of law.

## VI. CONCLUSION

Make no mistake about it, an evidentiary hearing on those matters summarily dismissed should have occurred-- to safeguard Mr. Taylor's right to due process and to effective representation of counsel. At the very least these matters should include a federal evidentiary hearing on those matters in which the state had a full an fair opportunity to address the merits of Mr. Taylor's claims, but failed to do so in because of the state's post-conviction procedural framework.

## VII. PRELIMINARY CONSIDERATIONS

C. COMPLIANCE WITH AEDPA

All of the issues raised herein have been fully exhausted and/or fairly presented to the highest level of Idaho's state court's; each issue is

contrary to well established federal law and previous opinions of the U.S. Supreme Court; all claims represent an unreasonable application of U.S. Supreme court case law; or, stem directly from an unreasonable determination of the facts. Each claim complies with the demands of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), as enacted by Congress April 24, 1996; since this application has been filed within one (1) year of the remittitur from Mr. Taylor's last properly filed collateral attack on the conviction and appeal thereof.

None of the claims listed herein have been previously litigated in any federal court.

D.  THE NECESSITY FOR AN ENLARGED RECORD

While it remains to be seen which portions of the underlying records the Respondent will conclude should be submitted for the Court's review; these allegations encompass substantial portions of the underlying district court proceedings, direct appeal, and post-conviction collateral proceedings; voluminous records that have been granted judicial notice in the state district and appellate court's. Accordingly, these records will undoubtedly be necessary for proof of the matters asserted by the parties.

Moreover, the allegations made here include the charge that a number of state court decisions are predicated upon an unreasonable determination of the facts; and, therefore, the Respondent is not entitled to the due deference standard set out in AEDPA.

Notice is hereby provided the Court and the Respondent that the Petitioner reserves the right to file a motion to expand the record, pursuant to Rule 7 of the Rules Governing § 2254 Cases, should the Attorney General's Lodging of State Court Records, answer, or pre-answer motion fall short.

E.     REQUEST FOR APPOINTMENT OF COUNSEL

While being mindful of the normal rulings on appointment of counsel in this jurisdiction, and at this stage of the proceedings, the Petitioner submits this request solely for purpose to preserve the record.

The need for Court appointed counsel, pursuant to 18 U.S.C. § 3006(a), is based on the following exceptional circumstances:

1. There has never been an evidentiary hearing on any of the three (3) principle issues for this application: a) Cruel and Unusual Punishment; b) Ineffective Assistance of Trial Counsel; and, c) Ineffective Assistance of Appellate Counsel.

2. There are numerous factual errors in the underlying record that override the presumption of correctness provision set out in AEDPA, and which will require an evidentiary hearing to properly resolve.

3. The Petitioner is incarcerated in a state prison that lacks any semblance of a law library. The Idaho Department of Correction (IDOC) has recently culled a semi-adequate reference 2015 Post-Conviction Remedies research book, and replaced its Resource Center's with an insufficient and outdated general concept legal publication. These research materials are of insufficient numbers to meet the high demand at ISCC, which is operating at 150% above and beyond the prisons design capacity. Thus, appointments to Resource Center often require lengthy delay and unavailable research books.

While the Idaho State Law Library has restored its service to provide prisoner's access to case law; but only on a prepaid basis. The time and cost involved to obtain the essential research make it unlikely that Mr. Taylor will be able to properly support his legal arguments.

4. The foregoing facts and issues require someone other than a pro

se litigant to be able to perform the needed research, draft and properly present the legal arguments involved. Mr. Taylor required the assistance of an inmate lay assistant to prepare this and other legal pleadings. The IDOC increasingly restrict these arrangements and Mr. Taylor cannot predict or rely on the assistance of other inmates.

5. The Petitioner undoubtedly meets the envisioned purpose of the statute whereby this Court has the authority to appoint counsel in these proceedings.

### VIII. PRAYER FOR RELIEF

**WHEREFORE,** the Petitioner prays this Honorable Court to review the Petition to determine whether it is subject to summary dismissal pursuant to 28 U.S.C. § 2243 and Rule 4 of the Rules Governing § 2254 Cases, and to enter an Order setting out the following:

1. Accepting jurisdiction in this matter and moving the proceedings forward on the Court's normal calendar;

2. Appoint counsel to represent Mr. Taylor's interests herein;

3. Order the Respondent to file an Answer and to show cause why the Writ should not issue;

4. For such further and other relief as the Court deems just and appropriate under the circumstances.

### IX. DECLARATION UNDER 28 U.S.C. § 1746

I, Christopher M. Taylor, do hereby declare under penalty of perjury:

1. That I am the Petitioner in the above-entitled cause; that I have read this Amended Petition in its entirety; and, that the information contained therein is true and correct to the best of my knowledge and belief;

2. That the original and two (2) copies of this Amended Petition were forwarded to the Clerk of the United States District Court for the District of Idaho, James A. McClure Federal Building and Courthouse, by depositing the same within the ISCC Resource Center, U.S. Mail first class postage prepaid, on this 27th day of March, 2017.

**EXECUTED** at the Idaho State Correctional Center, south of Boise City, State of Idaho, as evidenced by the Declarant's signature below.

**DATED** this 27th day of March, 2017.

                                                                               _Chris Taylor_
                                                                          Christopher M. Taylor
                                                                          Petitioner pro se