LAWRENCE G. WASDEN
Attorney General
State of Idaho

PAUL R. PANTHER
Deputy Attorney General
Chief, Criminal Law Division

KALE D. GANS, ISB #9013
Deputy Attorney General
L. LaMONT ANDERSON, ISB #3687
Deputy Attorney General
Chief, Capital Litigation Unit
Criminal Law Division
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-4539
Facsimile: (208) 854-8074
E-mail: kale.gans@ag.idaho.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CHRISTOPHER TAYLOR, | ) | CASE NO. 1:15-cv-00552-CWD |
| | ) | |
| Petitioner, | ) | |
| | ) | ANSWER AND BRIEF IN |
| vs. | ) | SUPPORT OF DISMISSAL OF |
| | ) | PETITIONER'S AMENDED |
| RANDY E. BLADES, | ) | PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| Respondent. | ) | |
| _____ | ) | |

COMES NOW, Respondent, Randy E. Blades ("state"), by and through his attorney, Kale D. Gans, Deputy Attorney General, Capital Litigation Unit, and hereby answers Petitioner's ("Taylor") Amended Petition for Writ of Habeas Corpus (Dkt. 18), and moves for dismissal of the same.

*ANSWER AND BRIEF IN SUPPORT OF DISMISSAL OF PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 1*

I.

**INTRODUCTION AND GENERAL RESPONSES**

Taylor is being detained by the State of Idaho pursuant to a Judgment and Commitment filed on December 5, 2011, in the District Court of the Fifth Judicial District of the State of Idaho, County of Jerome, by the Honorable John K. Butler, following Taylor pleading guilty to aggravated battery on a peace officer, aggravated assault on a peace officer, and admitting to a weapon enhancement and a persistent violator enhancement. (State's lodging A-1, pp.172-73, 248-255.)

All allegations and claims made by Taylor are denied by the state unless specifically admitted herein. The Amended Petition does not state grounds, which if true, would entitle Taylor to federal habeas corpus relief. Because Taylor's Amended Petition was filed after April 24, 1996 (Dkt. 3), his case is governed by the standards and law contained in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See* Lindh v. Murphy, 521 U.S. 320, 336 (1997).

II.

**FACTUAL AND PROCEDURAL BACKGROUND**

The state relies upon the state courts' findings of fact and denies any claim, factually or otherwise, in Taylor's Petition not specifically found by those courts.

Three-time convicted felon Taylor attempted to elude Officer Dennis Clark after Officer Clark tried to initiate a traffic stop. (State's lodging A-4, p.5.) Officer Clark pursued Taylor who was driving 100 miles per hour. (Id.) When Taylor finally stopped, he got out of his car and shot at Officer Clark, hitting Officer Clark in the face with a shotgun pellet. (Id.; State's lodging A-1, p.186; State's lodging A-3 (Exhibit 1).) Officer

*ANSWER AND BRIEF IN SUPPORT OF DISMISSAL OF PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 2*

Clark got back in his patrol car and rammed Taylor's car.  (State's Lodging A-1, p.186.)
Taylor ran to his car and drove away as Officer Clark returned fire.  (State's lodging A-4,
p.5; State's lodging A-1, p.186.)   Officer Clark and several other members of law
enforcement continued pursuing Taylor.  (State's lodging A-4, p.5; State's lodging A-1,
p.186.)

Officer Scott Novak, who was dispatched to assist Officer Clark, stopped his patrol
car along the road ahead of Taylor.  (State's lodging A-1, p.48.)  "Taylor drove directly
towards Officer [Novak's] car at a high rate of speed causing Officer Novak to feel the
imminent threat of great bodily harm or death from Taylor's actions."  (State's lodging A-
1, p.48.)  Officer Novak fired two shots at Taylor's car as Taylor continued eluding law
enforcement.  (State's lodging A-1, p.187.)

Taylor eventually crashed after being rammed again by Officer Clark.  (State's
lodging A-4, p.3; State's lodging A-1, p.187; State's lodging A-3 (Exhibits 2-4).)  Officer
Clark was transported via life-flight to have shotgun pellets surgically removed from his
eye.  (State's lodging A-4, p.3.)  As a result of the gunshot wound, Officer Clark is blind
in his left eye.  (State's lodging A-1, p.187.)

The state charged Taylor with aggravated battery on a peace officer, fleeing or
attempting to elude a peace officer, unlawful possession of a firearm by a felon, and
aggravated assault on a peace officer.  (State's lodging A-1, pp.116-118.)  The state also
filed an Information Part 2 for use of a deadly weapon in the commission of a felony and
an Information Part 3 alleging Taylor is a persistent violator.  (State's lodging A-1, pp.119-
121.)  Pursuant to a plea agreement, Taylor entered a guilty plea to aggravated battery on

a peace officer, an <u>Alford</u>[1] plea of guilty to aggravated assault on a peace officer, and admitted both the weapon and persistent violator enhancements; the state dismissed the remaining counts.  (State's lodging A-1, pp.172-173.)  The trial court imposed concurrent unified life sentences.  (State's lodging A-1, pp.248-254.)  Pursuant to I.C.R. 35, Taylor filed a motion to have his sentence reduced, which the trial court denied.  (State's lodging A-1, pp.277-288, 298-301.)

On direct appeal, Taylor challenged only his sentences, claiming they are excessive, and that the trial court erred in denying his request for I.C.R. 35 relief.  (State's lodging B-1.)  The Idaho Court of Appeals disagreed and affirmed Taylor's sentences.  (State's lodging B-4.)  The Idaho Supreme Court subsequently denied Taylor's petition for review. (State's lodgings B-5, B-6, B-7.)  The Remittitur issued on September 19, 2013.  (State's lodging B-8.)

Taylor filed a timely pro se petition for post-conviction relief alleging ineffective assistance of trial and appellate counsel.  (State's lodging C-1, pp.3-12.)  Taylor also filed a motion for the appointment of counsel, which the trial court denied in conjunction with its issuance of a notice of intent to summarily dismiss Taylor's petition.  (State's lodging C-1, pp.24-39.)  The court dismissed Taylor's petition after receiving Taylor's response to its notice of intent to dismiss.  (State's lodging C-1, pp.47-68.)

Taylor raised three claims in his post-conviction appeal:  (1) "ineffective assistance of counsel, of guilty plea terms of sentence of unfulfilled and unfulfillable promises"; (2) a due process violation in sentencing; and (3) ineffective assistance of appellate counsel. (State's lodging D-1, p.2 (quoted language verbatim, capitalization altered).)  The Idaho

---

[1] <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970).

*ANSWER AND BRIEF IN SUPPORT OF DISMISSAL OF PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 4*

Court of Appeals denied relief on all of Taylor's claims.  (State's lodging D-4.)  The Remittitur in Taylor's post-conviction appeal issued on June 14, 2016, but the Idaho Supreme Court subsequently granted Taylor's request to file an untimely petition for review.  (State's lodgings D-5, D-6, D-7, D-8, D-9.)  In his brief in support of review, Taylor contended the Idaho Court of Appeals erred in rejecting his claim that counsel was ineffective in failing to advise him of the potential for fixed life sentences.  (State's lodging D-10, p.4.)  The Idaho Supreme Court denied review and a Second Remittitur issued on August 16, 2016.  (State's lodgings D-11, D-12.)

Taylor filed his federal habeas petition on November 19, 2015 (mailbox).  (Dkt. 3.) Because Taylor's state post-conviction case was still pending at that time, and because none of the claims in Taylor's petition were exhausted, the Court dismissed Taylor's habeas petition without prejudice.  (Dkts. 6, 9, 10.)  Taylor filed a motion to reconsider, which the Court granted.  (Dkt. 14.)  As a result, the Court vacated the judgment dismissing Taylor's habeas petition, reopened this case, and allowed Taylor to file an amended petition.  (Dkt. 14.)  After receiving two extensions of time (see Dkt. 17), Taylor filed his Amended Petition for Writ of Habeas Corpus ("Amended Petition") on March 30, 2017. (Dkt. 18), appearing to raise the following claims:

Claim A:  "Cruel and Unusual Punishment – Abuse of Discretion"

Claim B:  Ineffective Assistance of Counsel, including (1) ineffective assistance of trial counsel for "encourag[ing]" Taylor to "plead guilty pursuant to a plea bargain that offered no advantage whatsoever over proceeding to trial" and for "failing to object" and "preserve for appeal" "the State's request for, and the judge's agreement to, what constitutes an illegal sentence under state and federal law"; (2) ineffective assistance of counsel for advising Taylor to plead guilty based on "counsel's advice and assurance that the worst he face[d] was an indeterminate life term"; and (3) ineffective assistance of appellate counsel for failing to "present on appeal an issue" challenging the sentencing enhancements.

(Dkt. 18, pp.6-12 (capitalization altered).)

The state responded with a Motion for Partial Summary Dismissal, asserting Claims A, B(1), and B(3) are procedurally defaulted (Dkt. 24), which this Court granted (Dkt. 33). Pursuant to the Court's Order (Dkt. 33, p.13), the state now files this answer and requests that the remaining claim–Claim B(2)–be dismissed.

III.

**EXHAUSTION OF STATE REMEDIES**

Taylor has exhausted state remedies in the sense that there are no available state procedures that exist for the proper presentation of any claims in his habeas petition, which may not have been previously submitted to the Idaho Supreme Court.

IV.

**PROCEDURAL DEFAULT**

The state previously addressed the issue of procedural default in its Motion for Partial Summary Dismissal wherein the state sought dismissal of Claims A, B(1), and B(3). (Dkt. 24.)  The state hereby incorporates its Motion for Partial Summary Dismissal and reasserts Claims A, B(1), and B(3) are procedurally defaulted.

Furthermore, Claim B(2) is also procedurally defaulted.  While it appears that Taylor fairly presented Claim B(2) to the Idaho Court of Appeals, the Idaho Court of Appeals denied Claim B(2) with a clear, consistently applied, well-established state procedural bar.  In its brief in support of partial summary dismissal, the state inadvertently overlooked the Idaho Court of Appeals' utilization of Powell v. Sellers, 937 P.2d 434 (1997), as a state procedural bar.  However, this Court may still consider this argument as

raised in this Answer.  *See* <u>Weaver v. Carlin</u>, 2013 WL 1797444 * 3 (D. Idaho 2013) ("Respondent did not include this [procedural default] argument in its previous Motion to Dismiss due to oversight, but is not precluded from including it in the Response to the Petition as a ground for dismissal." (citation omitted).)

If a state prisoner defaults a claim by violating a state procedural rule that is based upon adequate and independent state grounds, federal habeas relief is denied absent a showing of cause and prejudice or actual innocence.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-31 (1991)).  To establish "adequate and independent grounds," "a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default."  <u>Wells v. Maass</u>, 28 F.3d 1005, 1010 (9th Cir. 1994).  The primary purpose of the "adequate and independent" doctrine is to apprise a defendant of the statute's existence.  <u>Ford v. Georgia</u>, 498 U.S. 411, 423 (1991) (citing <u>NAACP v. Alabama ex rel. Patterson</u>, 357 U.S. 449, 457 (1958) (refusing to apply a state procedural rule because the defendant could not be "deemed to have been apprised of its existence")).  Because the doctrine is based upon notice, a defendant "cannot shirk his duty under [state] law . . . simply because there is no reported case directly on point."  <u>Bargas v. Burns</u>, 179 F.3d 1207, 1212 (9th Cir. 1999).  The procedural bar is not dependent upon "case law citation that speaks to the very same factual scenario as the one before it prior to invoking the rule of procedural default. Instead, we follow the Supreme Court's dictate that where a rule is sufficiently clear as to put a petitioner on notice that he must raise all claims or risk default, that petitioner must raise all claims."  <u>Id.</u>

Once the state pleads the existence of a state procedural bar, the petitioner may challenge the adequacy of the state procedure by citing authority demonstrating

inconsistent application of the rule.  If the petitioner adequately challenges the procedural bar, the ultimate burden of proving regular and consistent application of the bar rests with the state.  Bennett v. Mueller, 296 F.3d 752, 761-63 (9th Cir. 2002), as amended by 322 F.3d 573 (9th Cir. 2003); contra Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997) ("petitioner bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his direct appeal").

A review of the record shows that the Idaho Court of Appeals denied relief on Claim B(2) because Taylor "provide[d] no support from the record or from law to support his argument."  (State's lodging, D-4, p.9.)  Citing Powell, the Court noted that "[a] party waives an issue on appeal if either argument or authority is lacking"—which is a clear, consistently applied, and well-established state procedural bar requiring parties to support their claims with authority and argument.  (State's lodging D-4, p.9 (citing Powell, 130 Idaho at 128, 937 P.2d at 440)); see also Zichko v. Idaho, 247 F.3d 1015, 1021-1022 (9th Cir. 2001) (recognizing this procedural bar as clear, consistently applied, and well-established in Idaho).

Furthermore, while the Idaho Court of Appeals went on to examine the merits of Claim B(2), it did so in the nature of an alternative holding—it only looked to the merits after concluding that Taylor's claim failed, first and foremost, because "[a] party waives an issue on appeal if either argument or authority is lacking."  (State's lodging D-4, p.9.) Addressing the merits of a claim as an alternative holding does not mean the claim is not procedurally defaulted.  As explained in Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (emphasis in original), "a state court need not fear reaching the merits of a federal claim in an *alternative* holding."  *See also* Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir.

2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.").

The Idaho Court of Appeals rejected Claim B(2) because Taylor "provide[d] no support from the record or from law to support his argument"—a clear, consistently applied, and well-established state procedural bar.  (State's lodging D-4, p.9.)  Claim B(2) is accordingly procedurally defaulted in federal habeas and must be dismissed.

V.

## PRESERVATION OF ADDITIONAL DEFENSES INVOLVING PROCEDURALLY DEFAULTED CLAIMS THE COURT PREVIOUSLY DISMISSED

As detailed above, this Court previously ruled on the state's Motion for Partial Summary Dismissal and dismissed Claims A, B(1), and B(3) with prejudice because they are procedurally defaulted.  (Dkt. 33.)  Based upon the Court's dismissal of those claims, the state hereby reserves and preserves any and all additional defenses that could have been asserted regarding those specific claims if the Court had denied the state's motion regarding those specific claims.

VI.

## SPECIFIC ANSWERS AND MERITS BRIEFING REGARDING PETITIONER'S REMAINING CLAIMS

A.    Standards Of Law Regarding Habeas Claims And AEDPA

Under 28 U.S.C. § 2241(c), a petition for habeas corpus will be granted only if the petitioner alleges and proves facts showing he is in custody in violation of the Constitution, laws or treaties of the United States.  Habeas relief is further restricted by AEDPA, which permits relief only if the state courts' adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1.      The Contrary To And Unreasonable Application Clauses

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2255(d)(1) have independent meaning.  Bell v. Cone, 535 U.S. 685, 694 (2002).   A state court's decision is contrary to clearly established federal law, as determined by the United States Supreme Court, if it (1) "applies a rule that contradicts the governing law set forth in our cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from our precedent." Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

A state court's decision is an unreasonable application of clearly established federal law, as determined by the Supreme Court, when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.   An "unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410 (emphasis in original).   Taylor must establish the state courts' application of clearly established federal law, as determined by the United States Supreme Court, was "objectively unreasonable." Wildman v. Johnson, 261 F.3d 832, 837 (9th Cir. 2001).   Moreover, "review under § 2254(d)(1) is limited to the record that was before the

state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011).

The standard "is difficult to meet," granting authority to issue the writ only in cases "where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedent." <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011). Taylor "must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." <u>Id.</u> "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> This does not require citation of Supreme Court cases by the state court or even awareness of such cases, "so long as neither the reasoning nor the result of the state-court decisions contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." <u>Richter</u>, 562 U.S. at 99. Indeed, the Supreme Court has reasoned, "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Id.</u> This principle has been extended to situations where a state court "addresses some but not all of a defendant's claims." <u>Johnson v. Williams</u>, 568 U.S. 589, 293 (2013). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the

more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

     2.     Determination Of The Facts And State Court Findings

Factual findings fall within two AEDPA provisions, §§ 2254(d)(2) and 2254(e)(1). Lambert v. Blodgett, 393 F.3d 943, 971 (9th Cir. 2004). The Ninth Circuit has previously applied the two provisions to two different types of challenges based upon whether the challenge was premised "entirely on the state record," which the court considered under § 2254(d)(2) (intrinsic review) or the introduction of facts outside the state court record under § 2254(e)(1) (extrinsic review). Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004). However, as later recognized by the Ninth Circuit, "*Pinholster* eliminated the relevance of 'extrinsic' challenges when [ ] reviewing state-court decisions under AEDPA [ ] because it held that petitioners may introduce new evidence in federal court only for claims that we review *de novo*." Murray v. Schriro, 745 F.3d 984, 999 (9th Cir. 2014). Nevertheless, understanding how §§ 2254(d)(2) and (e)(1) should be viewed in the context of "intrinsic" challenges "presents a more complicated question," id. at 1000, and has yet to be resolved by the Supreme Court, Burt v. Titlow, 571 U.S. 12, 18 (2013), or the Ninth Circuit, Murray, 745 F.3d at 1001.[2]  Irrespective of apparent tension between §§ 2254(d)(2) and (e)(1), the Supreme Court has determined "'that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

---

[2] Other circuits have also declined to "delve into the relationship between subsections (d)(2) and (e)(1)." Robidoux v. O'Brian, 643 F.3d 334, 338 n.3 (1st Cir. 2011); *see also* Landers v. Warden, 776 F.3d 1288, 1293 n.4 (11th Cir. 2015).

conclusion in the first instance.'" Burt, 571 U.S. at 18 (quoting Woods v. Allen, 558 U.S. 290, 293 (2010)).

While the state recognizes this Court has previously relied upon "five types of unreasonable factual determinations that result from procedural flaws that occurred in state court proceedings," Veenstra v. Blades, 2015 WL 8215701, *4 (D. Idaho 2015) (quoting Taylor, 366 F.3d at 1000-01), the state doubts the continuing vitality of those factors in light of Pinholster, 563 U.S. at 181, and Murray, 745 F.3d at 1000-01, which questioned at least part of Taylor. For example, in Taylor, 366 F.3d at 1000-01, the court opined it is an unreasonable determination of fact "whether the state court should have made a finding of fact but neglected to do so." However, the state is unaware of any precedent mandating state courts articulate every factual finding. Indeed, in Taylor, the court explained, "we are mindful that the state courts are not required to address every jot and tittle of proof suggested to them, nor need they make detailed findings addressing all the evidence before them." 366 F.3d at 1001 (quotes, citations, and brackets omitted); see Gray v. Zook, 806 F.3d 783, 791 (4th Cir. 2015) ("a state court need not refer specifically to each piece of a petitioner's evidence to avoid the accusation that it unreasonably ignored the evidence"). Rather, "[t]o fatally undermine the state fact-finding process, and render the resulting finding unreasonable, the overlooked or ignored evidence must be highly probative and central to petitioner's claim. In other words, the evidence in question must be sufficient to support petitioner's claim when considered in the context of the full record bearing on the issue presented in the habeas petition." Taylor, 366 F.3d at 1001.

In Taylor, the court also stated that § 2254(d)(2) is met "where the state courts make factual findings infected by substantive legal error" such as when "a state court makes

evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence." 366 F.3d at 1001. However, the court's "example" is in conflict with other precedent that states an evidentiary hearing is not mandated for a court to conclude a petitioner has not met the burden imposed by § 2254(d)(2). Lambert, 393 F.3d at 965-66 ("[W]e will not read into 'adjudicated on the merits' a requirement that the state have conducted an evidentiary hearing, or indeed, any kind of hearing."); *see also* Gray, 806 F.3d at 792 ("A state habeas court need not hold an evidentiary hearing in every case to make reasonable factual determinations.").

More recently, the Ninth Circuit has clarified Taylor, explaining that § 2254(d)(2) challenges fall into two categories. "First a petitioner may challenge the substance of the state court findings and attempt to show that those findings were not supported by substantial and competent evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012) (citation omitted). The court explained, "Regardless of the type of challenge, the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." Id. (quotation and citation omitted). Addressing the substance of a state court finding, the court reasoned, "it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record," id. (quotes and citations omitted), which "is a daunting standard - one that will be satisfied in relatively few cases," Maxwell v. Roe, 628 F.3d 486, 500 (9th

Cir. 2010); *see also* <u>Tamplin v. Muniz</u>, 2018 WL 3322252, *3 (9th Cir. 2018) (quoting

<u>Murray</u>, 745 F.3d at 999) ("We may only hold that a state court's decision was based on

an unreasonable determination of the facts if 'we are convinced that an appellate panel,

applying the normal standards of appellate review, could not reasonably conclude that the

finding is supported by the record.'").  Addressing the state court's procedures, the Ninth

Circuit concluded, "[M]ere doubt as to the adequacy of the state court's findings of fact is

insufficient; we must be satisfied that any appellate court to whom the defect in the state

court's fact-finding process is pointed out would be unreasonable in holding that the state

court's fact-finding process was adequate."  <u>Hibbler</u>, 693 F.3d at 1146-47 (quotes and

citations omitted).  More importantly, even when a state court makes a credibility finding

without an evidentiary hearing, that finding is entitled to deference under § 2254(d)(2).

<u>Landers v. Warden</u>, 776 F.3d 1288, 1297 (11th Cir. 2015).  Therefore, this Court should

simply adopt the <u>Pinholster</u> requirements for § 2254(d)(2) claims, which have also been

adopted for purposes of § 2254(d)(1).  <u>Landers</u>, 776 F.3d at 1295 (citing cases); <u>Winston</u>

<u>v. Kelly</u>, 592 F.3d 535, 554 (4th Cir. 2010) (an analysis similar to § 2254(d)(1) applies to §

2254(d)(2)).

       Finally, § 2254(d)(2) is even more "'daunting'" and will be "'satisfied in relatively

few cases'" "because an 'unreasonable determination of the facts' does not, itself,

necessitate relief."  <u>Byrd v. Workman</u>, 645 F.3d 1159, 1172 (10th Cir. 2011) (quoting

<u>Taylor</u>, 366 F.3d at 1000).  "Rather, in order to receive relief under this clause, the

petitioner must show that the state court's adjudication of the claims 'resulted in a decision

that was *based on* an unreasonable determination of the facts in light of the evidence

presented.'"  <u>Id.</u> (quoting § 2254(d)(2)) (emphasis in original).

3.      Claims Which Are Reviewed *De Novo*

"[W]hen it is clear that a state court has not reached the merits of a properly raised issue, [this Court] must review it *de novo*."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).    However, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  Richter, 562 U.S. at 99.  Even if a claim must be reviewed *de novo*, "under AEDPA, factual determinations by the state court are presumed correct and can be rebutted only by clear and convincing evidence."  Pirtle, 313 F.3d at 1167.

B.      Under AEDPA And *De Novo* Review, Taylor Has Failed To Establish He Is Entitled To Habeas Relief On Claim 2(B)

In Claim 2(B), Taylor contends his trial counsel was ineffective for failing to properly advise him of the consequences of his guilty plea.  (Dkt. 18, p.10.)  Taylor has failed to show that the Idaho Court of Appeals' rejection of this claim constituted either an unreasonable application of clearly established federal law, or was based upon an unreasonable factual determination.  In any event, Taylor has also failed to show he is entitled to relief under *de novo* review.

Ineffective assistance of counsel claims are governed by Strickland v. Washington, 466 U.S. 668 (1984), which is "clearly established" for purposes of 28 U.S.C. § 2254(d).  Canales v. Roe, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998).  The purpose of effective assistance of counsel "is not to improve on the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial."  Pinholster, 563 U.S. at 189 (quoting Strickland, 466 U.S. at 689).  To prevail on a claim of ineffective assistance of

counsel, Taylor must show his counsel's representation was deficient and that the deficiency was prejudicial.  Strickland, 466 U.S. at 687.

The first element "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  In making this determination, there is a strong presumption that counsel's performance fell within the "wide range of professional assistance."  Id. at 689.  Taylor has the burden of showing counsel's performance "fell below an objective standard of reasonableness."  Id. at 688.  The effectiveness of counsel's performance must be evaluated from his perspective at the time of the alleged error, not with twenty-twenty hindsight.  Id. at 689.  "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge."  Richter, 562 U.S. at 105 (internal quotations and citation omitted).

"There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  Strickland, 466 U.S. at 689.  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  Richter, 562 U.S. at 105 (internal quotations and citation omitted).

The second element requires Taylor to demonstrate "a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome," Strickland 466 at 694, which "requires a substantial, not just conceivable,

likelihood of a different result," <u>Pinholster</u>, 563 U.S. at 189 (internal quotations and citation omitted). A reviewing court "must consider the totality of the evidence before the judge or jury," <u>Strickland</u>, 466 U.S. at 695, and reweigh that evidence "against the totality of available mitigating evidence," <u>Pinholster</u>, 563 U.S. at 189 (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 534 (2003)).

In <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985), the United Supreme Court clarified how the <u>Strickland</u> prejudice prong is to be applied where, as in this case, the defendant entered a plea of guilty. Pursuant to <u>Hill</u>, a petitioner is required to show that as a result of counsel's alleged deficient performance "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59; *see also* <u>United States v. Rodgers</u>, 769 F.2d 1418, 1425 (9th Cir. 1985).

Overcoming <u>Strickland</u>'s "high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). Because ineffective assistance of counsel claims provide a means to raise issues not presented at trial, the <u>Strickland</u> standard "must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." <u>Richter</u>, 562 U.S. at 105 (internal quotations and citation omitted). Establishing ineffective assistance of counsel under § 2254(d) "is all the more difficult. The standard created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> The reviewing court need not address both prongs of <u>Strickland</u> if an insufficient showing is made under only one prong. <u>Strickland</u> 466 U.S. at 697.

In this case, the Idaho Court of Appeals correctly cited to and applied <u>Strickland</u>, and correctly affirmed the trial court's summary dismissal of Taylor's ineffective

assistance of trial counsel claim.  (State's lodging C-4, pp.4, 8-10.)  Taylor has failed to show that the Court of Appeals' conclusion was based upon either an unreasonable application of <u>Strickland</u>, or an unreasonable factual determination.  He has therefore failed to demonstrate he is entitled to relief under AEDPA.  Taylor has also failed to demonstrate he is entitled to relief even under *de novo* review.

In Claim 2(B) Taylor asserts his trial counsel was ineffective for failing to adequately advise him about the consequences of his guilty plea.  (Dkt. 18, p.10.) Specifically, Taylor asserts that defense counsel "encouraged Mr. Taylor to plead guilty … '… to avoid spending the remainder of [his] life in prison,'" and that he "only agreed to plead guilty based entirely on defense counsel's advice and assurance that the worst he faced was an indeterminate life term," as opposed to a "potential fixed life sentence."  (Dkt. 18, p.10.)

But even assuming, *arguendo*, there was deficient performance due to attorney misadvice, a defendant must still prove prejudice to satisfy <u>Strickland</u>.  And the Ninth Circuit has rejected ineffective assistance of counsel claims where the record demonstrates the defendant was clearly advised by the sentencing court of the potential penalties in store for him.[3]  <u>Womack v. Del Papa</u>, 497 F.3d 998, 1004 (9th Cir. 2007) ("Even if Womack's

---

[3] Although only Supreme Court cases are binding on state courts under AEDPA, <u>Howes v. Fields</u>, 565 U.S. 499, 505 (2012), circuit cases "may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established,'" <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 1999); *see also* <u>Marshall v. Rodgers</u>, 569 U.S. 58, 64 (2013) (citations omitted) ("Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct.").

counsel's performance were somehow deemed ineffective, Womack was not prejudiced by his counsel's prediction because the plea agreement and the state district court's plea canvass alerted Womack to the potential consequences of his guilty plea."); <u>Gonzalez v. United States</u>, 33 F.3d 1047, 1051–52 (9th Cir. 1994) ("The district court informed Gonzalez of the maximum possible sentences and fines for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with Linstedt's representation of him. As a result, Gonzalez cannot claim he was prejudiced by Linstedt's alleged gross error in calculating the sentencing guidelines range and likely sentence."). In cases such as these, even assuming deficient performance *arguendo*, the defendant was unable to prove prejudice. <u>See</u> <u>id.</u>

The Idaho Court of Appeals therefore correctly concluded that Taylor failed to show ineffective assistance of counsel. It found that "even assuming Taylor's claim that trial counsel did not advise him of the maximum sentence was truthful, he has not shown that, *but for* counsel's error, he would not have pled guilty"—because, as it happened, "the record shows that the [trial] court informed Taylor of the maximum penalties he faced before he changed his plea in conformance with I.C.R. 11(c)." (State's lodging D-4, p.9 (emphasis added).) And the Court of Appeals concluded that, because the trial court advised Taylor of the potential life sentence, he could not "show[] that he was not advised of his potential maximum sentences of life in prison." (State's lodging D-4, p.10.) In other words, Taylor failed to show any prejudice.

This was precisely the post-conviction court's conclusion below; it cited to the "extensive arraignment" undertaken at the change of plea hearing, in which "the [trial] court informed [Taylor] of the possibility of a life sentence as evidenced by" the transcript:

> THE COURT: Now, with respect to the Information Part 3, the state charges you as a persistent violator pursuant to 19-2514, and the state alleges that you have previously been convicted of [3 felony crimes].
>
> …
>
> THE COURT: And do you understand that if you are adjudged to be a persistent violator, the *maximum penalty that you would face would be a minimum of five years in the state penitentiary, which could be extended to life?*
>
> THE DEFENDANT: Yes, sir.

(State's lodging C-1, p.62 (emphasis in original, line numbers omitted, quoting State's lodging A-2, p.14, L.17 – p.15, L.24.)

After this colloquy Taylor was unmistakably aware of the potential consequences of pleading guilty; as the post-conviction court put it, "the transcript makes clear that the Court advised the defendant of the persistent violator status and how that consideration could affect his sentence."  (State's lodging C-1, p.63.)  The post-conviction court therefore correctly concluded that "Petitioner's contention that he had ineffective assistance of counsel because he was never informed by his counsel or the Court that he faced the possibility of a fixed life sentence is clearly controverted by this admissible evidence and is patently frivolous."  (Id.)

Taylor has failed to demonstrate that the Court of Appeals' rejection of Claim 2(B) was based upon an unreasonable application of Strickland, or an unreasonable factual determination.  Because the record demonstrates Taylor was fully aware of the potential penalties of pleading guilty, he cannot show that any alleged misadvice from his attorney regarding the potential sentence prejudiced him.  He likewise necessarily fails to "show that there is a reasonable probability that, *but for* counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Lockhart, 474 U.S. at 58

(emphasis added, footnote and citations omitted).   Taylor has therefore failed to demonstrate he is entitled to relief under AEDPA.  He has also failed to demonstrate he is entitled to relief on this claim even under *de novo* review.

VII.

## **AVAILABILITY OF STATE COURT RECORDS**

The state has previously lodged relevant portions of the state court record with this Court pursuant to Rule 5 of the Rules Governing Section 2254 Cases.

VIII.

## **CONCLUSION**

WHEREFORE, the state prays:

1.      That the writ be denied, or, if granted, that all relief be denied;

2.      That the Court dismiss the Amended Petition with prejudice.

DATED this 18th day of October, 2018.

/s/_____
KALE D. GANS
Deputy Attorney General
Capital Litigation Unit

## <u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that on or about the 18th day of October, 2018, I caused to be serviced a true and correct copy of the foregoing document by the method indicated below, postage prepaid where applicable, and addressed to the following:

| | |
|---|---|
| Christopher Taylor, #68340 |   X   U.S. Mail |
| ISCC | _____ Hand Delivery |
| D1, 41-A | _____ Overnight Mail |
| P.O. Box 70010 | _____ Facsimile |
| Boise, ID 83707 | _____ Electronic Court Filing |
| PRO SE | |

/s/_____
KALE D. GANS
Deputy Attorney General
Capital Litigation Unit

*ANSWER AND BRIEF IN SUPPORT OF DISMISSAL OF PETITIONER'S AMENDED*
*PETITION FOR WRIT OF HABEAS CORPUS - 23*