Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
T: (208)-345-5183
F: (208)-906-8663
chd@fergusondurham.com
ISB No. 6428

Attorney for Petitioner

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER TAYLOR, | Case No. 1:15-cv-00552-CWD |
| Petitioner, | **PETITIONER'S REPLY TO RESPONDENT'S ANSWER AND BRIEF IN SUPPORT OF DISMISSAL** |
| v. | |
| RANDY BLADES, | |
| Respondent. | |

## INTRODUCTION

Christopher Taylor is serving two fixed life terms in prison after pleading guilty to aggravated battery and to aggravated assault on peace officers (with an *Alford* plea to the latter charge). In state court and again here, he has alleged that his trial counsel did not inform him that he faced a possible sentence of life in prison without parole and

1

that, had he known, he would have not pled guilty. He claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel. The state court denied the claim without appointing an attorney and without evidentiary development. It concluded that, regardless of counsel's advice, the trial court had informed Taylor of the maximum penalty that he faced when he entered his guilty pleas.

This was an unreasonable determination of the facts in light of the evidence presented. While the trial court did inform Taylor that he could receive "a minimum of five years in the state penitentiary, which could be extended to life," it never told Taylor that this meant he could be sentenced to life *without the possibility of parole*.

Respectfully, this Court should deny the State's request for dismissal of this claim. It should instead grant habeas relief to Taylor, or, short of that, permit him to develop the record on the remaining claim either through limited discovery and expansion of the record, or at evidentiary hearing.

## BACKGROUND

### A.   CHRIS TAYLOR PLEADS GUILTY AND IS SENTENCED TO TWO FIXED LIFE TERMS

In 2011, based on an incident in which he had fled from police officers and injured one by firing a shotgun at him during the ensuing chase, Chris Taylor faced four felony counts in state court with two sentencing enhancements – one for the use of a deadly weapon (Information Part II) and one for being a persistent violator of the law (Information Part III). (State's Lodging A-1, pp. 116-121.)

Taylor eventually agreed to plead guilty to aggravated battery on a peace officer, and he entered an *Alford* plea to a separate count of aggravated assault on a peace officer. (State's Lodging A-1, pp. 172-73.) He also admitted both sentencing enhancements. (*Id*.) As part of the deal, the State agreed to dismiss two lesser counts. (State's Lodging A-2, p. 9.) Sentencing recommendations were left open. (*Id*.)

At the change of plea hearing, the trial court engaged in a colloquy with Taylor regarding the maximum penalties for each charge and for the sentencing enhancements. (State's Lodging A-2, pp. 9-15.)

It first informed Taylor that he faced up to 30 years for aggravated battery on a peace officer, and up to 10 years for aggravated assault on a peace officer  (State's Lodging A-2, pp. 12-13.) Taylor acknowledged that he understood these penalties. (*Id*.)

It next told him that for the deadly weapon enhancement, which was linked to the aggravated battery charge, "the maximum penalty of 30 years could be increased by an additional 15 years." (*Id*. at 14.) Taylor indicated that he understood. (*Id*.) To this point, there had been no discussion that Taylor faced a possible life sentence.

When the court got to the persistent violator charge, though, the following exchange occurred:

> THE COURT: And do you understand that, if you are adjudged a persistent violator, the maximum penalty that you would face would be a minimum of five years in the state penitentiary, which could be extended to life?
>
> THE DEFENDANT:  Yes, sir.

(State's Lodging A-2, p. 15.)

The court accepted Taylor's guilty pleas. (State's Lodging A-2, pp. 28-33.) At the sentencing hearing, the prosecutor lobbied the court to impose a sentence of life without the possibility of parole. (State's Lodging A-2, pp. 39-60.) Taylor's counsel requested 15 years fixed follow by 15 years indeterminate for each count, all sentences run concurrently. (State's Lodging A-2, p. 69.) The court followed the State's recommendation and sentenced Taylor to two life sentences without the possibility of parole. (*Id*. at 87-88.)

On direct appeal, Taylor's appointed counsel argued that fixed life sentences were excessive. (State's Lodging B-1.) The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. (State's Lodgings B-5, B-6, B-7.)

### B.   TAYLOR'S ALLEGATIONS OF INEFFECTIVE ASSISTANCE OF COUNSEL WERE SUMMARILY DISMISSED WITHOUT EVIDENTIARY DEVELOPMENT

Taylor filed a timely pro se petition for post-conviction relief, claiming that his trial and appellate counsel were constitutionally ineffective. (State's Lodging C-1, pp. 3-12.)

As relevant here, he alleged that he was never informed that, if he took the plea offer, he could face the possibility of life in prison without the possibility of parole, and he asserted that he would not have pled guilty had he been so informed. Taylor claimed in his verified petition that his counsel "allowed him to plead guilty pursuant to a plea

bargain that offered no advantage whatsoever over proceeding to trial." (State's Lodging C-1, p. 22.) In an affidavit that he filed in support of his petition, he further alleged that his attorney had advised him that the worst sentence that he would face if he took the plea offer was an "indeterminate life term." (*Id.* at 12, ¶ 7.) (Attached as Exhibit A to this Response.) He also asserted in his affidavit that he "would NOT have accepted the state['s] proffered plea bargain in return for a plea of guilty to two (2) felony charges and multiple enhancements, if he had been informed that one or more fixed life sentence were possible by his attorney, Isaac Keppler." (*Id.* at ¶ 6) (Emphasis in original.)

Without appointing counsel, the district court found Taylor's allegations to be lacking in merit and issued a notice of intent to dismiss the petition summarily. (State's Lodging C-1, p. 27.)

In a second affidavit filed in response to the district court's notice, Taylor reiterated that while he had discussed the consequences of pleading guilty with his attorney "at length," his counsel never informed him "that he could receive a fixed life sentence." (State's Lodging C-1, p. 56.) (Exhibit B to this Response.) He was also not aware that the prosecutor was going to request such a sentence, and, moreover, that the "sentencing judge never advised [him] of that same possible outcome either." (*Id.*) Had he known that the prosecutor would have recommended it, or that it was a possible outcome, "[he[ would not have pled guilty." (*Id.*)

Still, the district court dismissed the petition summarily. Responding to Taylor's claim that he was unaware of that a fixed life sentence was a possibility, the court referred to that portion of the plea colloquy on the persistent violator charge where it said that "the maximum penalty that you would face would be a minimum of five years in the state penitentiary, which could be extended to life." (State's Lodging C-1, pp. 62-63.) The court found that it "met its burden by informing the petitioner that the maximum penalty for his status as a persistent violator could be life in prison." (*Id*. at 63.) The court concluded that Taylor's claim was "clearly controverted" by the plea hearing transcript. (*Id*.)

Taylor appealed, again without the assistance of counsel, (State's Lodging D-1) and the Idaho Court of Appeals affirmed. (State's Lodging D-4.) It concluded that the "record shows that the district court informed Taylor of the maximum penalties that he faced before he changed his plea in conformance with I.C.R. 11(c)." (*Id*. at 9.) Taylor filed a petition for review, which was denied.

He has come to this Court seeking habeas relief. (Dkt. 16.) Earlier, the State filed a motion for partial summary dismissal (Dkt. 24), which was granted (Dkt. 33), and several subclaims were dismissed. In its memorandum decision, this Court noted that in Taylor's post-conviction petition for review, he had "asserted only that his trial counsel was ineffective for advising him to plead guilty without accurately informing

him of the maximum potential sentence." (State's Lodging D-10.) This corresponds to

Claim B(2) in the Amended Petition"(Dkt. 33, pp. 6-7), which is the remaining claim.

## DISCUSSION

### A.   THE REMAINING CLAIM IS NOT PROCEDURALLY DEFAULTED

The State previously filed a motion for partial summary dismissal in which it

asked the Court to dismiss all but the current claim as procedurally defaulted. (Dkt. 24.)

There, it wrote that "[w]ith the exception of subpart 2 of Claim Two in Taylor's

Amended Petition, Taylor's claims are procedurally defaulted and should be

dismissed." (Dkt. 24-1, p. 6.) The Court granted that request, and all claims other than

the present one were dismissed. (Dkt. 33.) The State now wants a do-over. It contends

that it "inadvertently overlooked the Idaho Court of Appeals' utilization of *Powell v.*

*Sellers*, 937 P.2d 434 (1997), as a state procedural bar" to this claim. (Dkt. 36, p. 6.) The

State urges the Court to find that this claim, too, is procedurally defaulted. (*Id*.)

It is possible that the State overlooked the state court's citation to *Powell* because

it was a an off-hand snippet in an opinion that otherwise addressed the factual and

legal merits of this federal ineffective assistance of counsel claim. That is not enough to

show a clear intent to dismiss on a state procedural ground.

For a claim to be procedurally defaulted, the opinion of the last state court

rendering a judgment in the case must clearly and expressly indicate that its judgment

rests on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). In ambiguous

cases, a federal court should presume that a state court decision is not based on an

independent and adequate state law ground if it "'fairly appears to rest primarily on

federal law, or to be interwoven with the federal law, and when the adequacy and

independence of any possible state law ground is not clear from the face of the

opinion.'" *Coleman v. Thompson*, 501 U.S. 722, 734 (1991) (quoting *Michigan v. Long*, 463

U.S. 1032, 1040-1041 (1983)).

Here, the structure and analysis in the Idaho Court of Appeals' opinion as to this

claim shows that it fairly appears to rest primarily on federal law. It first wrote that "in

his petition, Taylor alleged several claims of ineffective assistance by both his trial

counsel and appellate counsel." (State's Lodging D-4, p. 4.) It then set out the

unreasonable performance and prejudice test under the Sixth Amendment standard

from *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). (*Id*.) It cited the federal

standard specifically as to claims of ineffective assistance of counsel in a guilty plea

context. (*Id*.) With that framing of the law, it then divided the subparts of the opinion –

A, B, and C – into groups of Taylor's allegations of ineffective assistance claims. (*Id*.)

In subsection B, the court titled this claim as "Failure to Advise of Potential

Maximum Sentences." (State's Lodging D-4, p. 8.) It introduced the analysis by setting

out Taylor's argument: "Taylor argues that his trial counsel never informed him that he

could face two fixed life sentences and allowed him to plead guilty pursuant to a plea

bargain that netted an end result potentially less favorable than if he had proceeded to

trial." (*Id*.) Agreeing with the State, the court then recast the essence of Taylor's

argument as one in which he was ostensibly claiming that he pled for a specific

sentence, and wrote "Taylor did not plead guilty to two fixed life sentences – he pled

guilty to offense that subjected him to maximum life sentences, which the district court

imposed." (*Id*. at 4-5.) Setting aside for a moment the inaccuracy of the framing of the

issue, that is a  merits-based determination that the claim fails because Taylor, allegedly,

simply regretted pleading guilty rather than from incorrect advice about the potential

maximum sentence.  In other words, according to the court, Taylor was not deprived of

the effective assistance of counsel because he was not pleading for, nor was he

guaranteed, a specific sentence.

It is only then that the state court writes, "Taylor provides no support from the

record or from law to support his argument. A party waives an issue on appeal if either

argument or authority is lacking," citing *Powell*. (State's Lodging D-4, p. 9.)  But

immediately after that remark, it then launched into the second part of its analysis in a

new paragraph, writing "[f]urthermore, Taylor's assertions directly contradict the

record" before finding that the district court advised him of the maximum penalty. (*Id*.)

That paragraph concludes with "Taylor's assertion that his counsel was ineffective for

failing to advise him that the district court could impose maximum life sentences is

without merit and Taylor has not shown error in the district court's denial of this

claim." (*Id*.) Again, this is a merits-based conclusion. And, as both the State and this

Court have previously acknowledged, Taylor raised the claim in his petition for review in the Idaho Supreme Court. (Dkt. 24-1, pp. 7-8; Dkt. 33, pp. 6-7.)

It would be unreasonable to conclude that the Idaho Court of Appeals clearly relied on a state procedural bar to reject this issue given that its citation to *Powell* is sandwiched between two paragraphs that engage in factual and legal analysis of the Sixth Amendment claim. This is not an alternative holding. In fact, the court never expressly says that *Taylor* waived this issue in this particular case, only that "a party" waives an issue is argument or authority is lacking. Did it intend for that to be an independent basis for its judgment, an admonishment that it could so hold if it wanted, or something else?  At worst, the opinion is ambiguous, and the *Harris* presumption holds because the state court's decision does not fairly appear to rest independently on a state procedural ground.[1]

* * *

Taylor asks the Court to bear in mind that he was representing himself throughout the state post-conviction process, and it appears that due to his limited education and resources his self-representation depended on the uncertain and uneven

---

[1] And, as discussed in the next section, the Idaho Court of Appeals was just wrong. Taylor did present evidence in his affidavits in the district court, which was in the record before the Court of Appeals, that while he was aware that *an indeterminate* life sentence was possible, he was never informed that he could be sentenced to a fixed life sentence. Had he known that, he would not have pled guilty. (State's Lodging C-1, pp. 12, ¶¶ 6-7, 56, ¶ 4.)

assistance from other inmates. He filed affidavits in the state district court saying so and also reporting the woeful state of legal resources that were available to him. (State's Lodging C-1, pp. 11-12, 55.) The Ninth Circuit has indicated that, for exhaustion purposes, the federal courts should be more lenient when reviewing uncounseled filings. *E.g.*, *Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005). It is only now, late in habeas proceedings, that he has had the help of an attorney on any claim of ineffective assistance of trial counsel at any point in time.

Taylor respectfully requests that the Court deny the State's invitation to revisit the doctrine of procedural default.

### B.   THE STATE COURT'S DECISION WAS BASED ON AN UNREASONABLE FINDING OF FACT

Should the Court agree that the state court adjudicated the merits of the federal claim, Taylor has the initial burden to prove that the state court's decision was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or that it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, 28 U.S.C. § 2254(d)(2). Taylor can meet the standard in § 2254(d)(2).

### 1.   The Sixth Amendment Right

Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The clearly established law is found in *Strickland* and *Hill v.*

*Lockhart*, 474 U.S. 52 (1986). That is, a petitioner must show that his trial counsel's representation fell below an objective standard of reasonableness and that, but for the errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59 (applying *Strickland* to guilty pleas).

A guilty plea cannot be "induced by . . . misrepresentation." *United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988) (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). Construing clearly established Supreme Court law, the Ninth Circuit has held that "a defendant who pleads guilty in reliance on his or her attorney's 'gross mischaracterization of the likely outcome' of his or her case may be entitled to withdraw the plea on ineffective assistance of counsel grounds." *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005)(citing *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986)). This is primarily because counsel's unreasonable and prejudicial advice regarding a defendant's guilty plea can render the plea not a knowing, intelligent, and voluntary waiver of constitutional rights. *Iaea*, 800 F.2d at 865.

### 2. Taylor was never informed that he faced life without the possibility of parole

The heart the state court's adjudication on the merits was its finding that the state district court had advised Taylor about the maximum possible sentence that he faced at sentencing, allegedly remedying any defect in counsel's out-of-court advice on that subject. The State parrots that line again here, suggesting that "even assuming, arguendo, there was deficient performance due to attorney misadvice" (Dkt. 36, p. 19),

there was no prejudice because "Taylor was unmistakably aware of the potential consequences of pleading guilty" due to the state court's plea colloquy (Dkt. 36, pp. 20-21.) This was not unmistakable. Indeed, it was an unreasonable finding of fact in light of the evidence presented in the state court proceeding. At best, the state court's reliance on the plea colloquy represented a sleight-of-hand conflation between an *indeterminate* life sentence with a sentence of life *without any possibility of parole*. These are obviously different sentences with vastly different consequences to a defendant, consequences that would be material to a defendant's decision whether to accept a guilty plea.

What's more, in reaching its conclusion the state court ignored Taylor's evidence. He repeatedly swore under oath that while he knew that in a worst case scenario he could get an indeterminate life sentence, no one – not his counsel or the trial court – informed him that he could be sentenced to a term that would never give him an opportunity to be paroled.

Nothing about the trial court's colloquy on the persistent violator charge rebuts that, much less "conclusively" so. There, the court told Taylor "the maximum penalty that you would face would be a minimum of five years in the state penitentiary, which could be extended to life."

This statement is confusing and ambiguous. Its most readily apparent meaning is that the "maximum" sentence that Taylor faced was five years fixed in prison with a life indeterminate tail. Under Idaho's sentencing schemes, that would mean that Taylor

could be eligible for parole in as few as five years but that, if he didn't make parole, his sentence could "extend" to life, as the district court said. In the analogous context of interpreting vague or ambiguous statutes, courts apply the "rule of lenity," a rule that requires courts to construe ambiguities in the defendant's favor. *See United States v. Hertler*, 776 F.3d 680, 685-86 (9th Cir. 2015) (The rule of lenity "instructs that, where a statute is ambiguous, courts should not interpret the statute so as to increase the penalty that it places on the defendant.") That should hold true here as well.

Yet a more generous interpretation for the district court is that the court informed Taylor that the minimum sentence is five years but that the court could still sentence him to "life" in prison. Even under that interpretation, which is not an obvious or natural reading of the exchange, the court does not say that Taylor would never be eligible for parole.

Nothing in the record, therefore, conclusively disproved Taylor's sworn testimony that he  pled guilty believing that he would at some point have a shot at release on supervision. Taylor's testimony is even more credible considering that it makes little sense to plead guilty if the outcome is that he very likely could be sentenced to die in prison. He stands to gain very little by waiving all of his constitutional rights.

Given the evidence presented in the state court, it was unreasonable for the state court to find that the trial court had properly advised Taylor, and that Taylor understood, that the maximum possible sentence was life in prison without the

14

possibility of parole. That was the material finding of fact on which the state court's decision rested. Taylor has satisfied § 2254(d)(2).

### 3.   This Court should either grant relief or allow evidentiary development

Once a court determines that the state court's adjudication of a claim on the merits was based on an unreasonable determination of the facts, it is free to evaluate the claim de novo, and it may consider evidence properly presented for the first time in federal court. *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014).

Freed from the constraints of AEDPA, Taylor asks this Court to conclude that he was deprived of the effective assistance of counsel. Misadvice about something so basic as the possibility that a defendant could spend the rest of his life in prison without any opportunity for parole falls well below an objective standard of reasonable attorney representation. *See, e.g.*, *Iaea*, 800 F.2d at 865 ("counsel have a duty to supply criminal defendants with necessary and accurate information.") No attorney, acting reasonably, would fail to advise his client properly about that critical distinction if he pleads guilty – life without parole versus life with the chance of parole. *See* ABA Criminal Justice Section Standards, the Defense Function, 4-5.1 ("defense counsel should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.")

Taylor has also shown prejudice under *Strickland* and *Hill*. He has alleged that but for is counsel's failure, he would not have pled guilty. (State's Lodging C-1, p. 12,

15

¶¶ 6-7, p. 56, ¶ 4); *cf. Hill,* 474 U.S. at 60 (finding no prejudice because the petitioner had failed to allege that, "had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial.").

In sum, Chris Taylor gave up his right to a jury trial based on an incorrect understanding of the consequence that he faced due to his counsel's errors. He now sits in prison with no possibility ever to be released. He has provided facts and evidence supporting both parts of a Sixth Amendment ineffective assistance of counsel claim.

He has at least alleged facts and provided evidence that, if proven true, would entitle him to relief. If the Court deems it necessary to allow evidentiary development before resolving the matter, it should do so, either by granting discovery to the parties so that trial counsel may be deposed or by setting an evidentiary hearing.

## CONCLUSION

Based on the foregoing, this Court should deny the State's request for dismissal of Claim B(2).

RESPECTFULLY SUBMITTED on this 5th day of June, 2019.

/s/Craig H. Durham
Attorney for Petitioner

16

**CERTIFICATE OF SERVICE**

I CERTIFY that on the 5th day of June, 2019, I filed the foregoing electronically

through the CM/ECF system, which caused the following parties or counsel to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kale Gans
Kale.Gans@ag.idaho.gov

Attorney for Respondent.

/s/Craig H. Durham
Attorney for Petitioner