# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER TAYLOR,<br><br>                Petitioner,<br><br>   v.<br><br>RANDY E. BLADES,<br><br>                Respondent. | Case No. 1:15-cv-00552-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is an Amended Petition for Writ of Habeas Corpus filed by Idaho state prisoner Christopher M. Taylor ("Petitioner" or "Taylor"), challenging Petitioner's Jerome County convictions of aggravated battery and aggravated assault on a peace officer, including sentencing enhancements for use of a deadly weapon and persistent violator status. Dkt. 18. The Court previously dismissed Claims A, B(1), and B(3) with prejudice as procedurally defaulted without legal excuse. Dkt. 33.

Claim B(2)—the only remaining claim—is now fully briefed and ripe for adjudication. The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. Dkt. 25; *see* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. 23. Having carefully reviewed the record in this

MEMORANDUM DECISION AND ORDER - 1

matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court will enter the following Order denying habeas corpus relief.

## BACKGROUND

Absent clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), the following facts of Petitioner's case, as described by the Idaho Court of Appeals, are presumed correct:

> An officer attempted a traffic stop on a car driven by Taylor. Taylor attempted to elude the officer. A chase ensued with Taylor reaching a speed of 100 mph at times. At one point Taylor briefly stopped his vehicle and fired a shotgun at the officer. The officer was hit but returned fire and continued the pursuit after Taylor again attempted to flee. Another officer tried to block Taylor's path but Taylor turned his vehicle toward the officer's vehicle, resulting in the aggravated assault charge. Ultimately, Taylor crashed his car and was captured. The officer who was wounded by the shotgun is now blind in his left eye. When Taylor committed these crimes he was a three-time convicted felon and was on probation.

State's Lodging B-4 at 3.

In the Fifth Judicial District Court in Jerome County, Idaho, Petitioner pleaded guilty to (1) one count of aggravated battery on a peace officer, with sentencing enhancements for use of a deadly weapon and for being a persistent violator, and (2) one count of aggravated assault on a peace officer, with a persistent violator sentencing enhancement. Petitioner received two concurrent fixed life sentences. *Id.* at 1.

## DISCUSSION

In Claim B(2), Petitioner asserts that, before he pleaded guilty, his attorney failed to advise him that he could receive a fixed life sentence. Dkt. 18 at 10. The Idaho Court of Appeals rejected this claim in Petitioner's post-conviction proceedings, concluding that the trial court properly warned Petitioner of the potential maximum sentence and, therefore, Petitioner could not show prejudice from any deficient performance on the part of his counsel. State's Lodging D-4 at 9.

For the reasons that follow, the Court concludes that the Idaho Court of Appeals' rejection of Claim B(2) was not unreasonable. *See* 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to relief on the merits of Claim B(2).[1]

### 1. Habeas Corpus Standard of Law

A federal court may grant habeas corpus relief when it determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] For this reason, the Court need not address Respondent's alternative argument that Claim B(2) is procedurally defaulted based on an adequate and independent state procedural ground.

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner does not assert that the state court's rejection of Claim B(2) was contrary to, or an unreasonable application of, federal law under § 2254(d)(1). Rather, Petitioner contends that the state court's factual finding—that the trial judge informed Petitioner that the maximum potential sentence was a fixed term of life imprisonment—is unreasonable under § 2254(d)(2).

A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). State court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d), the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778. When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and circuit

precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Generally, even if a petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to federal habeas relief only if the petitioner "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted). However, some types of claims "are analyzed under their own harmless error standards, which can render *Brecht* analysis unnecessary." *Jackson v. Brown*, 513 F.3d 1057, 1070 (9th Cir. 2008). Ineffective assistance of counsel claims are included in this category. *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) ("[W]here a habeas petition governed by AEDPA alleges ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), we apply *Strickland*'s prejudice standard and do not engage in a separate analysis applying the *Brecht* standard.").

2. **Clearly Established Law Governing Claims of Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel ("IAC") claims was set forth by the Supreme Court

in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A petitioner must establish both deficient performance and prejudice to prove an IAC claim. *Id.* at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one prong is not satisfied and would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96.

To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112. To show prejudice based on deficient performance of counsel in a case where, as here, the Petitioner pleaded guilty, the Petitioner "must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

3.      **State Court Decision**

The Idaho Court of Appeals assumed, without deciding, that Petitioner's counsel performed deficiently by failing to inform Petitioner that the maximum potential sentence on each charge was fixed life imprisonment. However, the appellate court went on to hold that Petitioner had not established prejudice from any such failure because, before he pleaded guilty, Petitioner was informed of the maximum penalties *by the trial court*:

> Taylor argues that his trial counsel never informed him that he could face two fixed life sentences and allowed him to plead guilty pursuant to a plea bargain that netted an end result potentially less favorable than if he had proceeded to trial. Taylor argues that, had he known the consequences of his guilty pleas, there would be no reason for him to plead guilty. However, as the state correctly argues, Taylor did not plead guilty to two fixed life sentences—he pled guilty to offenses that subjected him to maximum life sentences, which the district court imposed. Because Taylor might regret pleading guilty without an agreement as to sentencing does not mean that he was not advised of the maximum penalties….
>
> Furthermore, Taylor's assertions directly contradict the record. The record shows that, after the district court advised Taylor of the maximum penalties for both charges to which he pled guilty, the district court also advised Taylor of the consequences of the persistent violator enhancement to which Taylor also agreed to plead guilty. The district court specifically asked Taylor if he understood that the "maximum penalty that [he] would face would be a minimum of five years in the state penitentiary, which could be extended to life." In response, Taylor replied, "Yes, sir." Thus, *even assuming Taylor's claim that trial counsel did not advise him of the maximum sentence was truthful, he has not shown that, but for counsel's error, he would not have pled guilty because*

> *the record shows that the district court informed Taylor of the maximum penalties he faced before he changed his plea* in conformance with [Idaho Criminal Rule] 11(c). Therefore, Taylor's assertion that his counsel was ineffective for failing to advise him that the district court could impose maximum life sentences is without merit[,] and Taylor has not shown error in the district court's denial of this claim.

State's Lodging D-4 at 8–9 (emphasis added).

### 4. The State Court's Rejection of Claim B(2) Was Not Based on an Unreasonable Finding of Fact

As noted previously, Petitioner claims that the Idaho Court of Appeals made an unreasonable factual finding when it found that the trial court accurately informed Petitioner that the maximum potential sentence on each count was fixed life imprisonment.

At the plea hearing, the trial court advised Petitioner as follows with respect to the persistent violator enhancements:

> THE COURT: Now, with respect to the Information Part 3, the state charges you as a persistent violator pursuant to 19-2514 ….
>
> …
>
> THE COURT: Sir, do you understand the nature of the allegations as alleged in the Information Part 3?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you understand that if you are adjudged to be a persistent violator, *the maximum penalty that you would face would be a minimum of five years in the state*

> *penitentiary, which could be extended to life?*
>
> THE DEFENDANT: *Yes, sir.*

State's Lodging A-2 at 14–15 (emphasis added). Petitioner contends that the trial court's statement to Petitioner can only be reasonably interpreted as advising Petitioner that the maximum *fixed* portion of his sentence was five years, followed by "a life indeterminate tail"—meaning that Petitioner could be sentenced to life imprisonment but would be eligible for parole after five years. Dkt. 48 at 13–14.

The Court disagrees. Though the judge's statement is not a model of clarity—particularly given that the judge described the "maximum" penalty in terms of a "minimum" penalty—that statement is susceptible to two reasonable interpretations. The first is that advanced by Petitioner: that Petitioner could be sentenced to a "maximum" fixed term of five years, but that, following the fixed term, his sentence could be "extended to life" as the result of an indeterminate term of life imprisonment. State's Lodging A-2 at 15.

The second reasonable interpretation of the trial judge's comments is that the "*minimum* [term] of five years in the state penitentiary … could be extended to life." *Id*. (emphasis added). That is, the minimum period of confinement could be anywhere from five years to life. And a minimum period of confinement for life necessarily means a fixed life sentence—an accurate description of the maximum potential penalty.

Because both of these interpretations of the trial judge's statement are reasonable, the Idaho Court of Appeals' finding that the judge's statement accurately informed

MEMORANDUM DECISION AND ORDER - 10

Petitioner that he could be sentenced to a maximum of life imprisonment—that is, a *fixed* life sentence—was also reasonable. *See* 28 U.S.C. § 2254(d)(2). Therefore, this Court is bound by that factual finding.

In turn, because the trial judge accurately informed Petitioner of the maximum potential sentence before Petitioner pleaded guilty, Petitioner has not established that, absent the alleged failure of trial counsel to inform him of the maximum potential sentence, he would not have pleaded guilty but would have insisted on going to trial. *See Hill*, 474 U.S. at 59. Thus, Petitioner has not shown prejudice from trial counsel's allegedly deficient performance, and Claim B(2) must be denied.

## CONCLUSION

The Idaho Court of Appeals' rejection of Claim B(2) was not based on an unreasonable factual finding under § 2254(d)(2). Therefore, Petitioner is not entitled to habeas relief on Claim B(2).

## ORDER

**IT IS ORDERED:**

1. Claim B(2) of the Amended Petition for Writ of Habeas Corpus (Dkt. 18) is DENIED on the merits. Because all other claims have already been dismissed (*see* Dkt. 33), this entire action is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If

Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: February 24, 2020

_____
Honorable Candy W. Dale
United States Magistrate Judge